# MILLARD *v.* ROBERTS.

---

CONSTITUTIONAL LAW; REVENUE LEGISLATION; CONGRESSIONAL APPROPRIATION OF PUBLIC MONEY TO PRIVATE USE.

1. While under the Constitution of the United States all bills for raising revenue must originate in the House of Representatives, a bill which only incidentally carries an appropriation with it in order to give it effect, although such appropriation may in fact be a necessity for the efficiency of the bill, is not constitutionally barred from originating in the Senate.

2. The provision of the acts of Congress of February 12, 1901, 31 Stat. at
   L. 774, chap. 354, and February 28, 1903, 32 Stat. at L. 909, chap. 856
   (which acts relate to the elimination of grade crossings of railroads and
   the erection of a union station in this District), for the payment to
   two railroad companies of $3,000,000 as the share of the District in
   carrying the acts into effect, is not an appropriation of public money
   for private use which it was unlawful for Congress to make; but the
   appropriation is in compensation for the rights and privileges which
   the railroad companies agree to surrender, and for the magnitude of
   the work, otherwise perhaps needless, which they agree to perform.

No. 1481.   Submitted March 9, 1905.   Decided March 21, 1905.

HEARING on an appeal by the complainant from a decree of
the Supreme Court of the District of Columbia, sustaining a
demurrer to and dismissing a bill in equity to enjoin the pay-
ment of money appropriated by acts of Congress.   *Affirmed.*

The COURT in the opinion stated the case as follows:

The appellant, Josiah Millard, as complainant, filed his bill
in equity in the supreme court of the District of Columbia to
enjoin the payment by the Treasurer of the United States of
any money of the District of Columbia to any person whatso-
ever in pursuance of the act of Congress of February 28, 1903,
32 Stat. at L. 909, chap. 856, entitled "An Act to Provide for
a Union Railroad Station in the District of Columbia, and for
Other Purposes," construed in connection with the act of Con-
gress of February 12, 1901, 31 Stat. at L. 774, chap. 354, pro-
viding for the elimination of grade crossings of railroads in this
District, and to prohibit the carrying into effect of the pro-
visions of these acts of Congress, and to have the acts themselves
declared null and void, as without constitutional warrant.
The purpose of the bill is to prevent the payment by the Treas-
urer, out of the funds of the District of Columbia, of the sum
of $1,500,000, to the Baltimore & Ohio Railroad Company, and
of an equal sum to the Philadelphia, Baltimore, & Washington
Railroad Company, as the share of the District in carrying
these acts into effect.

A demurrer was interposed to the bill, and the demurrer was sustained and the bill dismissed. From the decree of dismissal the complainant has appealed.

*Mr. W. Preston Williamson* for the appellant, who also appeared in proper person.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, *Mr. Wayne McVeagh, Mr. Andrew B. Duvall,* Corporation Counsel, *Mr. Geo. E. Hamilton, Mr. M. J. Colbert, Mr. F. D. McKenney,* and *Mr. J. S. Flannery* for the appellees.

*Mr.* Justice MORRIS delivered the opinion of the Court:

As we understand it, there are two questions raised by the appellant in this case: (1) That the appropriation of the money of the District of Columbia towards the payment of the expense provided by the acts of Congress in question is that of public money for a private use, and is therefore unconstitutional and void; and (2) that the acts are void because they are revenue measures and originated in the Senate instead of the House of Representatives, in which latter body the Constitution of the United States requires that all bills for raising revenue shall originate. We will first consider the second question.

1. It is conceded that the acts in question originated in the Senate. It is so alleged in the bill, and conceded by the demurrer, and the statement is not controverted. But the plain answer to this contention is that the acts in question are not bills for the raising of revenue, but, at the utmost, bills for the expenditure of revenue, or appropriation bills, where the appropriation is incidental to some other purpose. It may be that the general appropriation bills, so called, as well as bills for the raising of revenue, should originate in the House of Representatives; and we believe the fact to be that they always do so originate. But a bill plainly for another purpose, and which only incidentally carries an appropriation with it in order to give it effect, although such an appropriation may in

fact be a necessity for the efficiency of the bill, is not constitutionally barred from originating in the Senate. If it were, possibly one half or three fourths of the legislation of Congress would be null and void. Every bill granting a pension, every bill providing for any additional employee in any of the executive departments, every bill providing for an additional circuit or district judge of the United States, every bill providing for an additional vessel for the Navy or an additional regiment for the Army, and hundreds of other bills of various kinds, would be outside of the range of consideration by the Senate until they had been acted on by the House of Representatives, and the body sometimes known as the upper house of Congress would be reduced almost to a condition of "innocuous desuetude," which is certainly very far from the real condition as it exists to-day. This has not been the practice of Congress; and this is not the reasonable understanding of the clause in the Constitution which remits to the House of Representatives alone the authority to originate bills for the raising of revenue. The principles invoked by the appellant are correct, but they are inapplicable; and no authority is cited to show that such legislative enactments as those now under consideration have been held invalid, for the reason that they contravened the organic law in the matter of their origination. See Story, Const. sec. 880; *Twin City Nat. Bank* v. *Nebeker,* 167 U. S. 196, 42 L. ed. 134, 17 Sup. Ct. Rep. 766.

2. The appellant's second contention is more plausible; namely, that the appropriation of money in the acts of Congress mentioned is an appropriation of public money for private use, which it is not lawful for the legislature to make. Here also the principle is sound for which the appellant contends. It is contrary to right and justice, and to the fundamental principles of our government, to take the property raised by taxation for public purposes, and to devote it to private uses, even under the pretense that these private uses subserve the general interest of the public. The authorities, if authorities are needed, are believed to be uniform in support of this proposition, although there are, no doubt, great divergencies of opin-

ion as to what constitute private as distinguished from public
uses. But the defect in the appellant's position is that there
is not here any appropriation of public funds for private uses.

The Baltimore & Ohio Railroad Company had a valid con-
tract with the District of Columbia, sanctioned by Congress,
whereby it was authorized to procure the site of its present
station, and to establish and maintain that station there until
the year 1910. It is now proposed to take that station away
from it and to compel it to incur vast expense for the construc-
tion of a new station upon another site. This it is perfectly
competent for Congress to do, but not without payment for the
property taken and without some compensation for the change
required to be made. And the case is not substantially different
with the Philadelphia, Baltimore, & Washington Railroad
Company. On the face of the acts of Congress the appropria-
tion purports to be in compensation for the rights and privi-
leges which the railroad companies agree to surrender, and
for the magnitude of the work, otherwise perhaps needless,
which they agree to perform. The case is practically that of a
contract between the United States and the District of Co-
lumbia on the one side, and the railroad companies on the
other, whereby the railroad companies agree to surrender
certain rights, rights of property as well as other rights, and
to construct a work of great magnitude, greater perhaps than
their own needs require, but which Congress deems to be de-
manded for the best interest of the national capital and by the
public at large; and for this surrender of right and this work
of magnitude commensurate with the public demand, Congress
agrees to pay a certain sum, partly out of the funds of the
United States and partly out of the funds of the District of
Columbia. It is a simple case of bargain and sale, like any
other purchase. Some persons there may be who may think
the amount of the purchase money too great; but that is a con-
sideration for Congress, not for the courts.

Much of the argument on behalf of the appellant is devoted
to the subject of taxation, and the matter of direct and indirect
taxation; but, in the view which we take of this case, the argu-

VOL. XXV.—15.

ment is wholly irrelevant. We do not think that any question of taxation is involved here. Of course, the money appropriated is, or is to be, the result of taxation, but of general, and not of any special taxation. No special tax is sought to be laid to meet the appropriation. The question in the case is simply as to the use of the money after it has been raised; and we see no good reason to question the authority of Congress to make the appropriation.

Recognizing, as we do, the patriotic purpose of the appellant to defend and protect the rights of the citizen against unlawful misappropriation of the public funds, raised from him and others by taxation, yet we find here no case of excess or abuse of its power by the legislative authority. We should be slow in any event to question the constitutionality of congressional legislation; and the case should not be a doubtful one where the courts will assume to declare such legislation invalid.

We are of opinion that the decree appealed from was right, and that it should be affirmed, with costs. And it is so ordered.

*Affirmed.*

An appeal by the appellant to the Supreme Court of the United States was prayed and allowed March 22, 1905.